**Joe BROWN (Plaintiff), Respondent,**

v.

**MILNER HOTEL (Defendant), Appellant.**

No. 30406.

St. Louis Court of Appeals.
Missouri.

Feb. 16, 1960.

———◇———

Gerwitz & Seegers, G. L. Seegers and W. W. Sleater III, St. Louis, for appellant.

Slaton & Coday, John J. Slaton, Clayton, for respondent.

WOLFE, Presiding Judge.

This action was brought in the Magistrate Court of the City of St. Louis for penalties alleged to be due the plaintiff under Section 290.110 RSMo 1949, V.A.M.S., relating to the payment of discharged employees. There was a judgment for the defendant in the Magistrate Court, from which the plaintiff appealed. Upon trial to a jury in the Circuit Court there was a verdict and judgment for the plaintiff in the sum of $1,400, and the defendant prosecutes this appeal.

■ At the outset it should be noted that the "Statement of Facts" in the appellant's brief is wholly inadequate. It states none of the facts brought forth in the trial of the case, and is consequently in violation of Supreme Court Rule 1.08, 42 V.A.M.S. Ambrose v. M. F. A. Co-Operative Ass'n, Mo., 266 S.W.2d 647; Wildermuth v. Fred Medart Manufacturing Co., Mo.App., 330 S.W.2d 126; Parenteau v. Parenteau, Mo.App., 305 S.W.2d 723; Peterson Co. v. Landes, Mo.App., 280 S.W.2d 857. No motion to dismiss the appeal was filed, but, on the contrary, the respondent's brief adopts the appellant's "Statement of Facts" as a "correct and just statement". Since it appears that the appeal is meritorious and that the points relied upon are clearly stated, we will not dismiss it because of the deficiencies noted, even though it does cast an undue burden upon this court.

As stated, the action originated in the Magistrate Court. The petition charged that the defendant corporation employed the plaintiff up to May 28, 1958, at which time he was discharged by the defendant. It is alleged that the defendant refused to pay the plaintiff the wages due him at the time of his discharge, and that he had made written demand on the defendant to do so. It concludes with a prayer for the penalties provided by Section 290.110 RS Mo., V.A.M.S. That section is as follows:

"Whenever any corporation doing business in this state shall discharge, with or without cause, or refuse to further employ any servant or employee thereof, the unpaid wages of any such servant or employee then earned at the contract rate, without abatement or deduction, shall be and become due and payable on the day of such discharge or refusal to longer employ; and such servant or employee may request in writing of his foreman or the keeper of his time to have the money due him, or a valid check therefor, sent to any station or office where a regular agent is kept; and if the money aforesaid, or a valid check therefor, does not reach such station or office within seven days from the date it is so requested, then as a penalty for such nonpayment the wages of such servant or employee shall continue from the date of the discharge or refusal to further employ, at the same rate until paid; provided, such wages shall not continue more than sixty days, unless an action therefor shall be commenced within that time."

The evidence on behalf of the plaintiff was that he started to work for the Milner Hotel Corporation around the last of December, 1957. He was hired as a night elevator operator, and in addition to his duties as such he was required to sweep the

lobbies, keep the toilets clean, and act as bell boy. The hotel was located at Eighteenth Street and Washington Avenue in the City of St. Louis. It apparently catered to truck drivers, and in addition to the work plaintiff did in the hotel, he had an arrangement whereby he picked up the truck drivers at the truck dock and drove them to the hotel in his own car. This he did in the daytime, and was paid for that service at the rate of fifty cents a passenger. This payment was in addition to his wages, and the arrangement in relation to it is not very clear.

His pay for the night work at the hotel was at the rate of 80½ cents an hour, and he worked eight hours a day for six days a week. In February, 1958, the defendant started the installation of an automatic elevator, which required no operator. While this was in the process of being installed, a service elevator was used. After the installation was completed, there was no longer any need for an elevator operator, but the plaintiff continued to work as bell boy. His hourly wage was reduced from 80½ cents per hour to 46 cents an hour. He was paid on May 15, 1958, $71.76, and that pay check included two days' pay at the reduced rate. His next pay period was covered by a check dated May 26, 1958 for $46.52. The plaintiff's testimony as to what took place when he was given the check for $46.52 is as follows:

"A. When he was giving me the check, I asked him what was that; he said, 'This is your pay.' I said, 'My check was eighty some dollars last pay.' He said, 'Well, I cut you a bell boy's pay.' So I said, 'A Bell boy's pay?' He say, 'Yeah, I cut you a bell boy's pay, and if you don't want to do it I'll get me another boy.'

"Q. I didn't hear that last. A. He say, 'If you don't want to work, I'll git me another boy.' That was his words."

When asked again on cross-examination to state what happened at the time he received the check, the following testimony was elicited:

"A. What happened, I came in one night to go to work, so it was payday night; so I walks in the office, Mr. Adams' office, to get my check—forty-three dollars and some cents, I think it was.

"Q. You couldn't be mistaken? It might be $46.52? A. Yeah, I could be; it could be forty-six.

"Q. Could be? A. Could be, yes, sir. So I asked Mr. Adams, I say, 'What's this? It's not my pay.' He said, 'Yeah, I cut you down to bell boy's pay.' I said, 'Bell boy's pay?' I say, 'I don't want to be bell boy.' I say, 'I do porter work, run the elevator, and bell boy.' So he say, 'Well, if you can't work,' he say, 'Well, I'll have to git me another boy in,' so I walks on out; gets my stuff and walks out the door.

"Q. You walked out then. A. Yes, sir.

"Q. He didn't tell you you were fired? A. He said if I couldn't work for that, he has to get him another boy, so I take it for granted I was fired.

\* \* \* \* \* \*

"Q. You could have continued on at this pay, could you not, if you had accepted the lower pay? A. Well, I don't know whether I could of or not."

This constitutes all of the evidence in relation to plaintiff's contention that he was discharged. There was evidence offered on behalf of the defendant that the manager of the hotel explained to plaintiff some time prior to the reduction in wages that such a reduction would take place as soon as the automatic elevator was in operation.

■ It is contended that the plaintiff failed to make a submissible case and

**62**

that the trial court erred in refusing to direct a verdict for the defendant. The section upon which the case is based is penal in its character and must be strictly construed. Durant v. Industrial Products Mfg. Co., 241 Mo.App. 266, 235 S.W.2d 574; Quinn v. T. M. Sayman Products Co., Mo.App., 296 S.W. 198, 199. It states that penalties become due under contingencies set out when the corporate employer discharges or refuses to further employ the employee, and that the wages are payable on the day of "such discharge or refusal to longer employ." There certainly must be evidence of a discharge or refusal to further employ, and upon this score the evidence is wholly lacking. The plaintiff was hired as an elevator operator, with some other chores on the side, and when his services were no longer required to run the elevator he was kept on as a bell boy at a reduced wage. He did not want to work at the reduced wage and he quit.

It may be that plaintiff did not receive the required notice that his wages were to be reduced. Section 290.100 RSMo 1949, V.A.M.S., requires a written notice of a wage reduction and prescribes a penalty of fifty dollars payable to the employee if there is a failure to comply with the statute. This section, designed to cover situations where there has been a reduction of wages without notice, certainly puts to rest any idea that a wage reduction could be construed as a refusal to further employ. Such a construction would be extending Section 290.110 far beyond the ordinary accepted meaning of the words used.

The evidence was wholly insufficient to sustain a verdict for the plaintiff, and the court erred in refusing to direct a verdict for the defendant.

The judgment is reversed.

ANDERSON and RUDDY, JJ., concur.